# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| MELVIN SIGUE | CIVIL ACTION NO. 08-0101 |
| VS. | SECTION P |
| RONNIE HEGGER, WARDEN | JUDGE MELANÇON |
| | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Before the court is petitioner Melvin Sigue's *pro se* petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 on January 16, 2008. Sigue is an inmate in the custody of Louisiana's Department of Public Safety and Corrections, currently incarcerated at the Avoyelles Parish Detention Center in Bunkie, Louisiana. Sigue attacks his 2005 conviction for possession with intent to distribute cocaine entered in the Sixteenth Judicial District Court for Iberia Parish, Louisiana.

This matter has been referred to the undersigned for review, report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

On March 3, 2004, petitioner was charged with one count of possession with intent to distribute cocaine and one count of possession of a schedule II narcotic. He pled not guilty and his case was fixed for trial.

On August 17, 2005, after jury selection had been completed, petitioner withdrew his not guilty plea and entered a "best interest" plea of no contest to the possession with intent to distribute cocaine charge; the possession charge was dismissed. The prosecutor and the trial court emphasized that the plea was "open ended", that is, that there was no agreement as to the sentence to be imposed by the trial court, and that petitioner could therefore be sentenced to up to 30 years, the maximum sentence established for the offense.[1] [rec. doc. 3, pp. 9-22, Plea Transcript; *see also* rec. doc. 3-2, p. 25, Plea Agreement]. In connection with his plea, petitioner signed a "Certificate Outlining Felony Drug Offense Plea & Conditions of Probation or Recommendation for Parole" which indicates that the plea is "open-ended" and further contains a handwritten notation

---

[1] At the outset, the prosecutor explained the terms of the plea as follows, "It is my understanding that Mr. Sigue has agreed to enter a no contest plea to the charge of Possession with Intent to Distribute Cocaine . . . . The agreement is that it will be an open-ended plea with a Certified Criminal History being ordered; a Sentencing Hearing at a later date. The District Attorney's Office has agreed not to file a multiple-offender's bill against Mr. Sigue. And in connection with this guilty plea the State dismisses the Count #2 charge." Sigue advised the court that he understood those terms. [rec. doc. 3, p. 10]. Further, the court then reiterated the terms of the plea as follows, "I have to get some information from you and satisfy myself, . . . that you understand the constitutional rights that you have, those that you waive when you plead guilty and those that you maintain. That you understand the statute under which you are charged and the possible penalty, as you are pleading guilty open-ended with no promises to anything." [*Id.* p. 11]. Further, the court advised petitioner that the sentencing range was imprisonment "to a term of hard labor for not less than two nor more than thirty years, with the first two years being without benefit of probation, parole, or suspension of sentence . . .", to which petitioner averred that he understood the range of possible penalties that could be imposed. [*Id.*, p. 16]. Finally, the court specifically addressed petitioner and asked, "other than what is contained, sir, in this plea agreement, that you plead open-ended to Possession with Intent to Distribute Cocaine, and that the State agrees not to multiple bill you, and that the court will order a Certified Criminal History – actually, I want a PSI – a PSI, and sentence you at a later date, has anybody promised you anything else or threatened you in any way to get you to plead guilty?" Petitioner responded, "No, Ma'am." [*Id.*, pp. 19-20]. Petitioner's counsel likewise stated that he knew of no such promises. [*Id.*, p. 20]. In closing, the court advised petitioner of her sentencing philosophy stating, "I don't throw people away but I take a look at the whole person, not just this action. Everything that you have been prior to this, and that includes everything – if there is some bad stuff, that goes against you. If there's some good stuff, that goes in your favor. So I don't just take one day out of your life and judge you accordingly. I do consider the whole person, and I am going to tell you what I tell the younger people . . . I am not going to throw you away. But I am going to do what I think your criminal history and your life reflects – okay?" Petitioner acknowledged his understanding stating, "Yes, Ma'am." [*Id.*, p. 21].

"2-30 2 w/o". [rec. doc. 3-2, p. 25]. In open court, petitioner acknowledged that he had read and understood this plea agreement and that he had gone over the agreement with his counsel and understood counsel's explanation of the terms. [rec. doc. 3, p. 12].

A sentencing hearing was held on November 3, 2005. Petitioner's oral motion to withdraw his no contest plea was denied.[2] Petitioner was sentenced to serve ten years at

_____

[2] The transcript reflects the following colloquy between petitioner and the trial judge:

Petitioner: Judge Landry, I had an understanding, prior to the trial, you know, prior to the trial, we had communications with my attorney and my attorney addressed me that some kind of plea be retained, something like that. Supposed to be sentenced, supposed to be a little more hardship – is what I was informed.

Court: What? I remember this case, Mr. Sigue. I just have this memory. We did have a pre-trial conference. You and I spoke, your attorney, and the D.A. I told you, sir, if you are innocent, go to trial. And you actually availed yourself of that right. We picked the jury and then you pled no contest. After that, I went through the painstaking Boykin, saying, you understand your right to trial, sir. They are here, you selected them. Painstakingly, that you pled open-ended, two to thirty. That's the sentencing range.

Petitioner: Okay, yes, Ma'am, that's right. I was also coerced by psychological persuasion to accept that plea. Because –

Court: By who? Who coerced you?

Petitioner:  – I was under the influence –

Court: Stop. Stop. Who coerced you?

Petitioner: Like I said, before the trial had began in May I was having conferences with you and my attorney.

Court: No. We had the pre-trial conference, which happens like a week before or maybe two weeks before –

Petitioner: – it was before, right before the trial.

Court: Who coerced you?

Petitioner: I say it was psychological coercion to sign the little –

Court: – who coerced you. There are not but four people in the equation. I don't know what you and your lawyer talk about in private – me, Mr. Vines, Mr. Spears and yourself. There are four people involved in this equation. And there were twelve people sitting here, with two alternates. Who coerced you?

Petitioner: Like I said, I had a conference with my attorney and I talked to you, also. But it was off the record, it ain't in the courtroom.

Court: No, sir, nothing off the record with me.

Petitioner: Well, that's what you told me. It's off the record, in the back, Ma'am.

Court: No. That was a pre-trial conference.

Petitioner: No, it wasn't a pre-trial conference. You told me to take the – you told me – that's what you told me.

Court: So I coerced you?

Petitioner: No, It's not – I didn't you, I say it's a part of both of y'all, my attorney and you.

                                    *    *    *

Court: Well, I don't know what people say happens with their attorneys in private. I know what I do. If I am hearing you right, you want a motion to withdraw your plea, which I am going to deny. Based on my memory of this case, nothing in your case was done any differently than the other hundreds of cases we handle. We have pre-trial conferences. You had your day before the jury. I strongly suggested you go to the jury. . . After it was selected – this is my time to talk – you withdrew your previously entered not guilty plea and entered a no contest. You had a full Boykin. Your were by yourself with the Boykin. You didn't sit up here with forty other people. You were by yourself. You are a grown man, you made that decision. I know that I didn't coerce you.

hard labor.  [rec. doc. 3, pp. 23-34].

On November 22, 2005, petitioner filed a *pro se* motion to reconsider his motion to withdraw his no contest plea. In his motion, petitioner alleged that "dilatory tactics was employed to impede his desire to proceed to trial by the State and defense attorney", that his ten year sentence was "cruel and unusual" given his prior criminal history and mitigating factors, and that his sentence was illegal because the judge did not wait twenty-four hours after denying his motion before imposing sentence. [rec. doc. 3-2, pp. 41-44].

On December 2, 2005, petitioner filed a *pro se* application for post-conviction relief in the district court.  In this Application, petitioner alleged that "defense attorney and trial court employed non-judicial tactics to pursade [sic] defendant not to proceed with trial with an informal plea bargain or agreement, thereafter defendant capitulated to the coersive [sic] psychological pursuasion [sic] of the trial judge and defense attorney. Thereafter defendant sign [sic] waiver form to give up rights and pled guilty." Petitioner

---

*   *   *

Court: I know that I didn't coerce you. . . Before you left here you wanted me to tell you what my sentence was going to be and I told you that I never make a decision before the decision is before me.  Two to thirty. I probably said – are you looking at thirty – Mr. Sigue, I don't know.  But I am hearing negligent homicide and I am hearing armed robbery.  Are you looking at two? Probably not.  I never sentence anyone to the maximum, so that was probably part of our conversation.  You knew before today what you were doing, particularly since the criminal history . . . I understand where you are, sir.  But you can't stand and say, I didn't understand.  I don't know what happened between you and Mr. Spears, but I know what happened between this court, that jury that sat in that box, and you on the morning that you pled guilty.  And that is what I am speaking to.  So if what you are saying was a motion to withdraw your plea, it's denied.  Based on the fact that I interrogated you; I spoke with you at the pre-trial conference; at your plea time when the jury was waiting.  I am satisfied that you entered a no contest plea, fully knowing and aware and understanding.
[rec. doc. 3, pp. 24-30].

In response to petitioner's suggestion that he did not know the sentencing range because there was allegedly no numbers on his plea agreement, the judge responded "No.  I go over that with you.  It is called a Boykin, when I read the statute under which you are charged and the possible penalty.  And I say, specifically, since you are pleading open-ended, the sentence range is from two, the first two without benefits, to thirty.  I know what you signed.  I am looking at it. You plead guilty open ended. [rec. doc. 3, p. 31].

4

also alleged that the trial judge erred when she did not delay twenty-four hours between the denial of petitioner's motion and the imposition of his sentence as required by articles 873 and 559 of the Louisiana Code of Criminal Procedure. Finally, he complained that his sentence was excessive. On December 13, 2005, the trial court denied petitioner's application because petitioner "can not establish a claim that entitles him to relief." [rec. doc. 3-2, pp. 45-48].

On December 7, 2005, petitioner filed a *pro se* "Motion of Supplemental Brief" in connection with his motion of reconsideration. In his supplemental pleading, petitioner alleged for the first time that his ten year sentence violated a plea agreement entered into between him, his attorney, and the court, pursuant to which petitioner was to be sentenced to no more than five years in exchange for his guilty plea. Petitioner further alleged that the judge expressly advised him that he would receive no more than five years and that had he known the judge "would go back on her word" he would have proceeded to trial and not executed a waiver form. The trial judge denied petitioner's Motion without comment on December 8, 2005. [rec. doc. 3-2, pp. 49-51].

Thereafter, on January 10, 2006, petitioner filed a *pro se* "Post Sentence Motion to Withdraw Guilty Plea", which was denied on January 17, 2006. [rec. doc. 3-2, pp. 52-55].

On February 17, 2006, petitioner filed a *pro se* Motion to Amend Sentence in which petitioner argued that his 10 year sentence was excessive and that his attorney should have filed pretrial motions which would have established that, at worst, he was

guilty of possession and not possession with intent to distribute. He also suggested that a suspended sentence was appropriate. The motion was denied on March 1, 2006. [rec. doc. 3-2, pp. 56-57].

Petitioner directly appealed his conviction and sentence setting forth two assignments of error: (1) the trial court erred by denying his motion to withdraw his no contest plea; and (2) the trial court imposed an excessive sentence. [rec. doc. 3-2, pp. 26-36]. In support of the first assignment of error, appellate counsel argued that the "Defendant alleges in post-plea motions that he was under the impression the sentence would be capped at five years . . . [and that] [a]bsent an agreement to cap the sentence at five years, Defendant would not have entered a plea of no contest. The five-year cap was the motivating factor behind Defendant entering a plea of no contest." [rec. doc. 3-2, p. 32]. On September 27, 2006, the Third Circuit affirmed petitioner's conviction and sentence. *State v. Sigue*, 940 So.2d 812 (La. App. 3rd Cir. 2006).

With respect to his first claim for relief, that the trial court erred by denying his motion to withdraw his plea, the court observed that petitioner claimed, as he does herein, "that his plea agreement was induced by an agreement that he would not be sentenced to more than five years." However, the court found that "[i]n contrast to that assertion, the plea agreement form clearly shows that the Defendant agreed to plead no contest to possession of cocaine with intent to distribute, and, by a handwritten notation, that the sentencing range of the offense was from two to thirty years . . . ." The court found that

the transcript of the plea colloquy established that the court advised petitioner that the penalty provision of the statute in question provided for a sentence of not less than two nor more than thirty years and that petitioner acknowledged that he understood. Accordingly, the court held that "[b]ased on the plea agreement form and the plea hearing discussion, we find the Defendant failed to show that either the State or the trial court induced any misunderstanding of the possible sentencing exposure." Therefore, Sigue's claim was found to lack merit. *See Sigue*, 940 So.2d at 815-16.

With respect to his second claim for relief, that his sentence was excessive, the court held that "[i]n light of the Defendant's criminal history, and the substantial benefit of the elimination of his exposure to a sentence from the dismissed charge, we find that the ten-year sentence is not excessive." *See Sigue,* 940 So.2d at 818.

Petitioner's motion for rehearing in the Third Circuit was denied on November 15, 2006. Petitioner's request for further review in the Louisiana Supreme Court was denied without comment on September 28, 2007. *State of Louisiana ex rel. Melvin Sigue v. State of Louisiana*, 2006-2963 (La. 9/28/2007), 964 So.2d 354.[3] [rec. doc. 3-2, p. 1]. Petitioner did not seek further review in the United States Supreme Court.

On November 20, 2006, while his direct appeal was still pending, petitioner filed another *pro se* Application for Post-Conviction Relief in the Sixteenth Judicial District Court. In this Application, petitioner argued: (1) that his guilty plea was invalid because

---

[3] Petitioner did not provide a copy of his Supreme Court writ application; nor has he alleged the date it was filed, or the claims raised therein.

several "endeavors" were made to convince the petitioner to plead guilty; (2) ineffective

assistance of counsel because his retained counsel made many attempts to convince

petitioner to plead guilty; and (3) insufficiency of the evidence because petitioner was

"ambush" by the narcotics agents. [rec. doc. 3-2, pp. 17-24]. The application was denied

on December 1, 2006, with the notation, "Post Conviction Relief Denied, See C.Cr.P. art.

928." [rec. doc. 3-2, p. 17].

On November 27, 2006, petitioner filed another *pro se* pleading that was construed

by the district court judge as a Motion to Reconsider, but which appears to be an

addendum to the application for post-conviction relief. Therein, petitioner expanded his

argument concerning his allegedly involuntary plea, ineffective assistance of counsel and

evidence insufficiency claims. [rec. doc. 3-2, pp. 10-14].[4] The "motion" was denied on

December 1, 2006. [rec. doc. 3-2, p. 10].

On March 1, 2007, petitioner filed a *pro se* Motion for Specific Performance of the

plea agreement. In this pleading, petitioner again asserted that the trial judge had agreed

to sentence petitioner to serve only 5 years at hard labor. The motion was denied on

March 2, 2007. [rec. doc. 3, pp. 35-37].

The instant undated petition for federal *habeas corpus relief* was mailed on

---

[4] In this pleading, petitioner implied that he may have misunderstood whether the Judge promised a 5 year sentence or whether she suggested that he would only have to serve 5 years of the 10 year sentence if he earned diminution of sentence or "good time" credits. He concluded by requesting the court to "remand petitioner back to the trial court to clarify whether she meant petitioner to serve a 5 year or a 5 year sentence without the diminution of sentence."

January 15, 2008 and received and filed on January 16, 2008. Petitioner argues two claims for relief: (1) the trial court breached a plea agreement in which she [the judge] promised petitioner that she would sentence him to serve 5 years in return for his guilty plea; (2) ineffective assistance of counsel based on counsel's failure to object to a private meeting between the judge and petitioner.

In support of his first claim, petitioner attaches a letter dated March 12, 2007 from his trial counsel, Richard Spears. In that letter, Spears recalled the following events:

> On the date that you pleaded guilty, we took a break in the jury selection and met in the jury room behind Courtroom A. Judge Landry and I and Robert Vines were present and what was being offered to you was an open-ended plea and you wanted more assurance than that. Vines would not give you a set deal. Judge Landry asked me to step out for a minute and Vines and I left. Shortly thereafter, you came out and met me at counsel's table and told me that she said she would give you five years. Attorney Alicia Butler was present for that conversation. You asked us what we thought and we both told you that anything was better than you going to trial in this matter. [rec. doc. 1, p. 12].

By Order dated May 2, 2008, the undersigned noted that petitioner's ineffective assistance of counsel claim was not fairly presented to the Louisiana Supreme Court and therefore remained unexhausted.[5]  The undersigned then noted that petitioner had presented a "mixed" petition – one containing both exhausted and unexhausted claims. Thus, petitioner was directed to "state whether he requests that this court dismiss his

---

[5] Petitioner did not provide a copy of his writ application.  However, in order to have fairly presented the claim to the Louisiana Supreme Court in his application for writ of certiorari, the petitioner must first have presented the identical claim to the Court of Appeal. Petitioner has provided sufficient evidence to establish that the ineffective assistance of counsel claim was *not* presented to the Court of Appeal and therefore it *could not* have been presented to the Supreme Court.

petition without prejudice so that he may fully exhaust his claims in state court, whether he requests that this court stay his petition and hold same in abeyance pending complete exhaustion in the state courts, and whether he wishes to dismiss the unexhausted claim in the event that stay and abeyance is inappropriate." The undersigned also noted that it did not appear that petitioner had provided the state courts with the same evidence he relies on in this court, namely a March 12, 2007 letter from his attorney. [rec. doc. 2].

On May 12, 2008, petitioner filed yet another Application for Post-Conviction Relief in the state trial court. In this Application, petitioner asserts amongst other claims that his retained trial counsel rendered ineffective assistance, the claim that the undersigned previously noted appeared unexhausted. [rec. doc. 3-2, pp. 2-9]. That Application apparently remains pending in the state courts.

Petitioner also filed a Supplemental Motion for Specific Performance on May 12, 2008, to which he claims to have attached his attorney's March 12, 2007 letter which has also been submitted to this court in support of his claim that the trial judge breached a plea agreement she entered into with petitioner outside the presence of counsel. [rec. doc. 3-2, pp. 37-40; 3, pp. 35 and 5]. This Motion also appears to be pending in the state courts. Thus, as was noted by this court, it is clear that petitioner did not previously present this letter for the state court's consideration. Indeed, the letter post-dates the Louisiana Third Circuit Court of Appeal's decision on his breach of plea agreement claim and, hence, could not have been properly considered by the Louisiana Supreme Court

thereafter.

On May 21, 2008, petitioner responded to this court's May 2, 2008 Order, submitting a written response to this court's inquiry as well as documents requested by this court. [rec. doc. 3]. In his response, petitioner requested that this court dismiss his unexhausted ineffective assistance of counsel claim (which apparently is pending review by the Louisiana state courts) and proceed with a review of his claim that the trial court breached a plea agreement in which she [the judge] promised petitioner that she would sentence him to serve 5 years in return for his guilty plea. However, he also argues that there is good cause for his failure to fully exhaust before proceeding herein, alleging that his unexhausted ineffective assistance of counsel claim is potentially meritorious and that he "doesn't possess the jurisprudential acuity or astuteness to engage in intentional dilatory litigation." [rec. doc. 3, p. 3].

This Report and Recommendation follows.

## LAW AND ANALYSIS

### *Rule 4 Consideration*

Rule 4 of the Rules Governing § 2254 Cases authorizes the district court to examine and dismiss non-meritorious and frivolous *habeas corpus* petitions. *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir.1999). Thus, it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by

ordering an unnecessary answer.[6] *Kiser*, 163 F.3d at 328. Petitioner's breach of plea

agreement claim is non-meritorious and accordingly should be dismissed pursuant to Rule

4 for the reasons that follow.

### Standard of Review

This *habeas* petition was filed on January 16, 2008; therefore the standard of

review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and

Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir.

2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[7] AEDPA substantially

restricts the scope of federal review of state criminal court proceedings in the interests of

federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04

(5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d

334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389

(2000)[8] (noting that AEDPA "placed a new restriction on the power of federal courts to

---

[6]Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." The Advisory Committee Notes following Rule 4 state that " it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."

[7]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04 *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

[8]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the issues herein. Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and

"correct" error in state court proceedings, but must exercise a more limited review . . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000). Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya,* 226 F.3d at 404; *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523; *Montoya,* 226 F.3d at 403-04 *citing Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523. The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22. A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather, that application

must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts.
*Dowthitt,* 230 F.3d at 741. Federal *habeas* courts presume such factual determinations to
be correct; however, the petitioner can rebut this presumption by clear and convincing
evidence. *Id.*; 28 U.S.C. § 2254(e)(1). Thus, this court must defer to the state court's
decision unless it was based on an unreasonable determination of the facts in light of the
record of the State court proceeding. *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d
at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.2000). *See also Rudd v.
Johnson*, 256 F.3d 317, 319 (5th Cir.2001) ( "Unless rebutted by clear and convincing
evidence, a state court's determination of a factual issue shall be presumed to be correct.
The presumption [that a state *habeas* court's factual findings are correct] is particularly
strong when the state habeas court and the trial court are one and the same.").

## I. Breach of Plea Agreement

Petitioner claims that he was promised a five year sentence by the trial judge and
that it was this promise which induced him to waive his rights, forego trial by jury, and
plead no contest. He further claims that when he discovered that the judge intended to
impose a 10-year sentence, he sought to withdraw his plea but his motion was denied.

Petitioner raised identical claims on direct appeal. In support of the first
assignment of error, his court appointed appellate counsel argued, "Defendant alleges in
post-plea motions that he was under the impression the sentence would be capped at five

years . . . Absent an agreement to cap the sentence at five years, Defendant would not have entered a plea of no contest. The five-year cap was the motivating factor behind Defendant entering a plea of no contest." [rec. doc. 3-2, p. 32].

The Third Circuit Court of Appeals adjudicated this claim on the merits and rejected it.[9] In so doing, the court observed that petitioner claimed, as he does herein, "that his plea agreement was induced by an agreement that he would not be sentenced to more than five years." However, the court also noted, "In contrast to that assertion, the plea agreement form clearly shows that the Defendant agreed to plead no contest to possession of cocaine with intent to distribute, and, by a handwritten notation, that the sentencing range of the offense was from two to thirty years . . . ." Moreover, the court noted that the transcript of the plea colloquy established that the court advised plaintiff that the penalty provision of the statute in question provided for a sentence of not less than two nor more than thirty years and that petitioner acknowledged that he understood. Thus, the court concluded, "Based on the plea agreement form and the plea hearing discussion, we find the Defendant failed to show that either the State or the trial court induced any misunderstanding of the possible sentencing exposure." *State of Louisiana v. Melvin Sigue*, 2006-527 (La. App. 3 Cir. 9/27/2006), 940 So.2d 812 at 815-16.

_____

[9]Although petitioner apparently sought further review of this claim in the Louisiana Supreme Court, that court denied relief without further comment. Thus, this court presumes that the Louisiana Supreme Court relied on the same grounds as the Third Circuit, last reasoned state court opinion, in rejecting petitioner's claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802, 11 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

These findings of fact are supported by the record which has been made available by the petitioner. The Plea Agreement, referred to by the Third Circuit Court of Appeals, is of record herein, having been supplied by the petitioner. [rec. doc. 3-2, p. 25]. As noted by the Court of Appeals, the document contains "a handwritten notation, that the sentencing range of the offense was from two to thirty years . . . ."

The Appeals Court also relied upon the plea transcript when it found that petitioner "failed to show that either the State or the trial court induced any misunderstanding of the possible sentencing exposure . . . ." Review of the plea transcript provided by petitioner amply supports the Court of Appeals' finding of fact. [rec. doc. 3, pp. 9-22]. Before the court accepted petitioner's no contest plea, the prosecutor explained the terms of the open ended plea as follows, "It is my understanding that Mr. Sigue has agreed to enter a no contest plea to the charge of Possession with Intent to Distribute Cocaine . . . *The agreement is that it will be an open-ended plea with a Certified Criminal History being ordered*; a Sentencing Hearing at a later date. The District Attorney's Office has agreed not to file a multiple-offender's bill against Mr. Sigue. And in connection with this guilty plea the State dismisses the Count #2 charge." Petitioner advised the court that he understood these terms. (Emphasis added) [rec. doc. 3, p. 10].

Moreover, the court then reiterated the terms of the open ended plea as follows, "I have to get some information from you and satisfy myself, . . . that you understand the constitutional rights that you have, those that you waive when you plead guilty and those

that you maintain. That you understand the statute under which you are charged and the possible penalty, as *you are pleading guilty open-ended with no promises to anything*."(emphasis added) [*Id.* p. 11]. Further, the court advised petitioner that the sentencing range was imprisonment "to a term of hard labor for not less than two nor more than thirty years, with the first two years being without benefit of probation, parole, or suspension of sentence . . . ." Petitioner averred that he understood this range of possible penalties that could be imposed. [*Id.*, p. 16].

Finally, the court specifically addressed petitioner as to any promises or inducements in exchange for his plea and asked, *"other than what is contained, sir, in this plea agreement, that you plead open-ended* to Possession with Intent to Distribute Cocaine, and that the State agrees not to multiple bill you, and that the court will order a Certified Criminal History – actually, I want a PSI – a PSI, and sentence you at a later date, *has anybody promised you anything else or threatened you in any way to get you to plead guilty*?" Petitioner unambiguously responded, "No, Ma'am." The same question was posed to petitioner's attorney, who, likewise, confirmed that there were no promises other than those recited by the judge. (emphasis added) [*Id.*, pp. 19-20].

While the Supreme Court has yet to adopt a *per se* rule rendering guilty pleas invulnerable to collateral attack, *habeas* petitioners seeking to challenge the validity of their guilty pleas must overcome the "formidable barrier" created by their sworn statements during the plea colloquy. *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct

1621, 52 L.Ed.2d 136 (1977) *citing Fontana v. United States*, 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973).  Or, as articulated by the Fifth Circuit, "Where, from the transcript, the plea-taking procedures are clear and regular on their face, a petitioner asserting the existence of a bargain outside the record and contrary to his own statements under oath bears a heavy burden." *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir.1978).  Moreover, any documents signed by the defendant in connection with a guilty plea are entitled to "great evidentiary weight."  *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

Although the Third Circuit did not specifically cite any of the foregoing jurisprudence, it is abundantly clear that it relied upon those very principles of federal law to deny petitioner relief on direct appeal.  Petitioner has not shown that the Third Circuit's application of federal law was erroneous or unreasonable.

Nor has petitioner demonstrated an unreasonable determination of the facts by the state court.  On appeal, the Court examined the transcript of the plea colloquy and determined that petitioner was informed of his rights, informed of the terms and conditions of the open ended plea agreement,  and that he expressly denied the existence of any promises outside the open-ended plea agreement.  Petitioner has not rebutted the presumption of correctness that must be afforded these findings of fact.

Based on the foregoing, the undersigned must conclude that the Third Circuit Court of Appeals' rejection of petitioner's claim, that he was promised a 5-year sentence

in an off-the-record conversation with the trial judge, involved neither an unreasonable application of federal law nor an unreasonable determination of facts in the light of the evidence before it. Accordingly, under the applicable standard of review, petitioner's claim fails.

Even if the claim were examined without regard to the applicable standard of review, the claim is nevertheless without merit. "A defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath." *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) *citing United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir.1985). "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Id. citing Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136 (1977). Nevertheless, A defendant may seek *habeas* relief on the basis of alleged promises, though inconsistent with representations he made in open court when entering his guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. *Id. citing Harmason,* 888 F.2d at 1529. If the defendant produces independent indicia of the likely merit of his allegations, typically in the form of one or more affidavits from reliable third parties, he is entitled to an evidentiary hearing on the issue. *Id.* If, however, the defendant's showing is inconsistent with the bulk of his conduct or otherwise fails to meet her burden of proof in the light of other evidence in the

record, an evidentiary hearing is unnecessary. *Id*., *citing United States v. Smith*, 844 F.2d

203, 208 (5th Cir.1988) (per curiam) and *United States v. Raetzsch,* 781 F.2d 1149, 1152

(5th Cir.1986).

Sigue has submitted no affidavits from reliable third parties, the precise identity of

any eyewitness to the promise, or any indicia of the likely merit of his allegations.

Rather, to refute his own testimony under oath, and the statement of his attorney in open

court, petitioner now provides only a letter written by the attorney, not presented to the

state courts, which suggests that petitioner related an off-the-record sentencing promise

by the judge, to which petitioner's attorney was not a witness, allegedly extended prior to

the time that petitioner entered his plea.[10] [rec. doc. 20, pp. 19-20].   Petitioner's present

claim, however, is inconsistent with the bulk of his conduct and in the light of other

evidence in the record set forth above.

Both the prosecutor and the judge specifically and repeatedly advised petitioner

that there was no sentence agreement and accordingly, that petitioner was pleading open-

ended, meaning that petitioner's sentence would be determined at a sentencing hearing

following submission of a pre-sentencing investigation. Petitioner indicated that he

understood these terms.  The  judge also advised petitioner of the range within which she

---

[10]The undersigned need not further examine exhaustion as to this claim because the letter provides no new material evidentiary support which places the claim in any significantly different or stronger evidentiary posture than it was before the state courts and as such adds little to petitioner's claim.  *See Dowthitt v. Johnson*, 230 F.3d 733, 748-749 (5th Cir. 2000).  The state court had the critical facts before it, that the petitioner claims the judge made a sentencing promise to him and that the judge .  expressly denied the existence of any such promise.  The letter presents no "new facts" to this court.

could sentence him, ensuring that petitioner understood the possible penalty that could be imposed against him, to which Sigue acknowledged his understanding.

Moreover, the plea agreement signed by petitioner in connection with his plea fails to indicate that the plea was other than open ended, instead noting the range of possible penalties which could be imposed by the court.  Finally, the judge expressly inquired whether petitioner was relying on any  promises or inducements other than the agreement to dismiss the second charge pending against him.  Petitioner represented to the court that no such promises or inducements were made. His attorney made an identical representation.

This testimony, and the lack of any written plea agreement substantiating petitioner's claim, clearly refutes Sigue's allegations that he relied on the court's alleged promise of a five year sentence.  The record is clear and unambiguous.   Sigue's colloquy with the court and documents signed by him expressly contradict the existence of any promises or agreements not contained in the record.  In sum, there was no sentence agreement which could have been breached in this case.  Thus, Petitioner is not entitled to *habeas* relief on this claim.

## II.  Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective because he failed to object the trial court's request for counsel to step out of the jury room in order for the trial judge to discuss the proposed plea agreement with petitioner.  According to petitioner, counsel's

legal obligation to petitioner was abandoned "when counsel departed from petitioner without any indication or suggestion that petitioner desired or requested to be with the trial judge in the jury room uncounseled."

It is clear from the above procedural history that petitioner has not exhausted his ineffective assistance of counsel claim as that claim was not raised on direct appeal and has only recently been raised in petitioner's May 12, 2008 application for post conviction relief, which proceeding apparently remains pending before the Louisiana state courts.[11] Petitioner's response to this court's Order advising him of the unexhausted nature of this claim is ambiguous; petitioner requests dismissal without prejudice while also arguing good cause for his failure to exhaust prior to proceeding in this court. Accordingly, the undersigned will examine whether this entire petition should be stayed and held in abeyance pending further state court review, or whether petitioner's request for dismissal without prejudice should be granted. For the reasons which follow, the undersigned recommends that petitioner's ineffective assistance of counsel claim be dismissed without prejudice.

The Supreme Court has held that district courts may stay and hold in abeyance "mixed" petitions in only limited circumstances. This is so "[b]ecause granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts . . . ."

---

[11]Communication with the Clerks of the Sixteenth Judicial District Court, the Louisiana Third Circuit Court of Appeal and the Louisiana Supreme Court reveals that petitioner's post-conviction relief application was denied by the trial court on June 17, 2008, a writ for review was denied by the Third Circuit on October 1, 2008 (08 KH 822) and a writ for review is pending in the Louisiana Supreme Court (08 KH 2718), having been filed in that court on November 17, 2008.

*Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 1535 (2005). *See also Neville v. Dretke*, 423 F.3d 474, 479 (5ᵗʰ Cir. 2005). To be eligible for this remedy, there must be "good cause" for the petitioner's failure to exhaust his claims in state court prior to proceeding in federal court, the unexhausted claims must be potentially meritorious and the petitioner must not have engaged in intentionally dilatory litigation tactics. *Rhines,* 125 S.Ct. at 1535; *Neville*, 423 F.3d at 479.

The *Rhines* Court indicated that if a district court determines that stay and abeyance is inappropriate, the district court should allow the petitioner an opportunity to delete unexhausted claims and to proceed with exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. *Rhines,* 125 S.Ct. at 1535.

Sigue has failed to establish the criteria for the grant of a stay as set forth in *Rhines*. Petitioner offers no justification as to why he did not previously exhaust this claim in any of his numerous pre and post-conviction pleadings. To the contrary, petitioner did not even attempt to present this claim to the Louisiana state courts until after this court advised petitioner of his obligation to exhaust prior to proceeding herein. Thus, petitioner has not established "good cause" for his failure to previously exhaust this claim.

Moreover, petitioner has failed to demonstrate that his ineffective assistance of counsel claim is potentially meritorious. To establish ineffective assistance of counsel in

the context of a no contest plea, a *habeas* petitioner must satisfy the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (guilty plea). He must show that counsel's performance was deficient and that he was prejudiced as a result of the alleged deficiency. *Strickland*, 466 U.S. at 687.

In order to show prejudice resulting from an attorney's ineffective assistance during plea negotiations or the plea itself, the petitioner must show that, but for his counsel's deficiencies, he would have rejected the plea and proceeded to trial. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.2000) *citing Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

Thus, in order to succeed on this claim, petitioner would have to show that allowing an off-the-record discussion between petitioner and the trial court amounted to deficient performance. The undersigned is unaware of any provision of statutory or jurisprudential law which suggests that the complained of conduct of *counsel* is deficient.[12]

---

[12] Federal Rules of Criminal Procedure Rule 11(c)(1) provides, "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions." However, the proceeding in question was not governed by the provisions of the Federal Rules. The Louisiana Supreme Court has declined to adopt such an absolute prohibition against judicial participation in the plea agreement process. *See State v Bouie*, 817 So.2d 48, 54-55, 2000-2934 (La.

For these reasons, stay and abeyance is inappropriate in this case. A stay merely would prolong federal *habeas* review to no avail, contravening AEDPA's goal of "finality and speedy resolution of federal petitions." *Neville*, 423 F.3d at 479-480 *citing Rhines*, at 1535.

The undersigned has allowed the petitioner an opportunity to delete his unexhausted ineffective assistance of counsel claim and to proceed with his exhausted claim. [rec. doc. 2]. In response to this court's order, petitioner has requested dismissal of this claim without prejudice to proceed with review of his exhausted claim for relief. [rec. doc. 3, p. 3]. Under the circumstances presented in this case, the undersigned recommends that petitioner's request be granted. Accordingly;

**IT IS RECOMMENDED** that petitioner's breach of plea agreement claim should be **DENIED AND DISMISSED WITH PREJUDICE** in accordance with the provisions of Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief, and that petitioner's ineffective assistance of counsel claim be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party

5/14/02), **11-12.

may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See, *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Signed in Chambers, Lafayette,  Louisiana, on November 25, 2008.


C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE